**AFFIRMED and Opinion Filed August 2, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00414-CV

### ETHICUS HOSPITAL DFW, LLC AND PSN AFFILIATES, LLC, Appellants
### V.
### KRYSTAL MIMS, Appellee

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-16230**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

This is an appeal from the trial court's March 31, 2023 Final Judgment Against Garnishee Encore Bank. In a single issue, appellants Ethicus Hospital DFW, LLC (Ethicus DFW) and PSN Affiliates, LLC (PSN) contend that the trial court erred in its interpretation of the parties' Settlement Agreement term concerning credits for certain amounts paid. We affirm the trial court's judgment.

## Background

In 2019, appellee Krystal Mims had an employment agreement with Sagecrest Hospital–Grapevine (Sagecrest), a d/b/a of Ethicus DFW. In July of that month, PSN

acquired Sagecrest, and the parties agree that the acquisition triggered an obligation by PSN and Ethicus DFW to pay Mims a $500,000 severance benefit, to be paid in twenty-five monthly payments of $20,000.

In September 2020, Mims filed suit against Ethicus DFW and PSN, alleging claims for breach of contract and fraud for their failure to pay the severance amount due. The parties mediated those claims and agreed to the Settlement Agreement at issue in this proceeding, which provided that Ethicus DFW and PNS would be jointly and severally liable to pay Mims $450,000.[1] The Settlement Agreement called for monthly payments: the first four to be $50,000, then two at $25,000, and then twenty at $10,000.

The Settlement Agreement included a detailed provision under the heading "Default." As a general matter, if appellants failed to pay timely the minimum amount due in any given month, they would be in default. That said, a failure to pay was subject to "a maximum of two notice-and-opportunities-to-cure in any twelve month period," which involved Mims's giving written notice that a monthly minimum payment had not been made and that appellants had five business days to cure. If appellants failed to cure within five business days—or failed to satisfy the monthly minimum after receiving the maximum number of notices and opportunities to cure—then appellants would be in default. If such a default occurred, then Mims

---

[1] While other parties were sued by Mims and were parties to the Settlement Agreement, only PNS and Ethicus DFW remained as judgment debtors below and only they appear as appellants herein.

would be immediately entitled "to present the Agreed Judgment [see below] to the Court for entry, to pursue enforcement and collection of the Agreed Judgment, and/or to take any and all actions allowed by law to collect the remaining balance due under the Settlement Agreement," along with her reasonable attorney's fees, court costs, and other enforcement and collection expenses.

PSN and Ethicus DFW agreed further to execute the Agreed Judgment identified in the Default provision in favor of Mims for $900,000, i.e., twice the amount due under the Settlement Agreement. Counsel for Mims agreed to hold the Agreed Judgment in trust "until the Settlement Amount is paid in full. Any payments received under this Settlement Agreement shall serve to reduce the amount of the Agreed Judgment in an amount equal to double the amount of payment(s)." If PSN and Ethicus DFW defaulted under the Settlement Agreement, then counsel for Mims was to "present the Agreed Judgment to the Court for entry" and immediate collection.

This is precisely what happened: PSN and Ethicus DFW made only two $50,000 payments under the Settlement Agreement, both of which required Mims's giving notice and opportunity to cure; they completely defaulted in the third month. The Agreed Judgment was presented to the trial court, and on April 12, 2022, the court entered judgment in Mims's favor for "the amount of $900,000 less a credit equal to double any amounts paid by [appellants] pursuant to the parties' Settlement Agreement," plus postjudgment interest.

–3–

After the April 22 judgment was signed, appellants made payments to MIMs totaling $250,000. Mims filed this garnishment action attempting to recover the remainder of what was owed her. She filed a motion for entry of judgment, seeking to collect $450,000, i.e., $900,000 minus (a) two times the $100,000 that appellants had paid under the Settlement Agreement before they defaulted and (b) the $250,000 paid after default. Appellants filed a motion to dissolve the garnishment writs, arguing that Mims was entitled to only $200,000, i.e., $900,000 minus two times the total $350,000 that appellants had paid her.

The trial judge heard arguments on the motions on March 31, 2023, and the same day signed its final judgment awarding Mims $450,000, based on the amount owed on the underlying judgment, $18,750 in interest, and $13,397.50 in attorney's fees.

This appeal followed.

**Discussion**

In a single issue, appellants complain that the trial court erred by "refusing to apply the plain language of the parties' settlement agreement which specifically mandates that Appellants receive certain credits for amounts paid to [Mims]." The parties agree as to the total amount paid to Mims and the dates of those payments. The parties also agree that the Agreed Final Judgment and Settlement Agreement are unambiguous. Accordingly, the only question before us is a question of law: how

–4–

should appellants' payments made *after* they defaulted under the Settlement Agreement be credited under the Agreed Judgment.

We determine the meaning of an unambiguous contract as a matter of law, determining the parties' intent as expressed in the written document. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744 (Tex. 2020). Here, the parties made two related agreements, and the term at issue appears in both documents. The Settlement Agreement states the following:

> Counsel for Mims shall hold the Agreed Judgment in trust until the Settlement Amount is paid in full. Any payments received under this Settlement Agreement shall serve to reduce the amount of the Agreed Judgment in an amount equal to double the amount of payment(s) made.

The Agreed Judgment states that Mims is granted judgment against appellants:

> In the amount of $900,000 less a credit equal to double any amounts paid by Defendants pursuant to the parties' Settlement Agreement.

To identify the payments that should be double-credited, then, the Settlement Agreement references "[a]ny payments received *under this Settlement Agreement*"; the Agreed Judgment references "any amounts paid by [appellants] *pursuant to the parties' Settlement Agreement*." (Emphasis added.) As a preliminary matter, we agree with appellants that these two agreements were created as part of the same transaction and must be considered together; their similar terms must be harmonized. *See Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 208 (Tex. 2019). Thus, although the two agreements use different prepositional

phrases to describe the relationship of amounts paid to the Settlement Agreement, we conclude that they describe identical payments. *See id.*

Appellants argue that neither of these double-credit provisions contains a cut-off or a designated time after which the double credit does not apply. They contend that the obligation to pay Mims "flows from the Settlement Agreement, so all payments are made 'pursuant to,' or 'under' . . . the Settlement Agreement."

We disagree. The Settlement Agreement determined what appellants owed Mims as of its date and set forth the manner in which that amount was to be paid. The manner in which payments were to be made—including the time a payment was due and the limited number of notice-and-cure events permitted—were integral parts of the Settlement Agreement's definition of default. Thus, according to the plain language of the Settlement Agreement, payments made "under" or "pursuant to" the Settlement Agreement were payments made according to its terms. *See Syntax, Inc. v. Hall*, 899 S.W.2d 189, 191 (Tex. 1995) ("According to the common usage of the English language, a sale is 'pursuant to foreclosure of a tax lien' if it is a sale consummated 'in carrying out' foreclosure of a tax lien." (citing Webster's Third New International Dictionary of the English Language (Unabridged) 1848 (1961)); *see also* "pursuant to", Merriam-Webster Dictionary Online (defining "pursuant to" as "in carrying out: in conformity with: according to"). Only the two $50,000 payments made by appellants were made according to the terms of the Settlement Agreement: although those payments were not made timely, they were made within

the two allowable notice-and-cure time periods. No later payment by appellants was made timely, and appellants had no more notice-and-cure time periods available to extend the time for payments.

The Agreed Judgment was the parties' agreed upon remedy for default. When appellants defaulted, i.e., when they failed to make payments according to the terms of the Settlement Agreement, the Agreed Judgment became the operative agreement between the parties. No payments made after final default and entry of the Agreed Judgment could be made "under" or "pursuant to" the Settlement Agreement. We conclude that the trial court correctly refused to give double credit to the $250,000 payments made by appellants after entry of the Agreed Judgment.

We overrule appellants' single issue.

***

In her brief's Prayer, Mims asks that we affirm the trial court's judgment and then "remand the case to the trial court solely to determine whether Mims is entitled to her fees and costs, and the amount thereof, in defending against this appeal per the terms of the Settlement Agreement." Mims did not seek an award of appellate attorney's fees below. In fact, appellant specifically agreed at the garnishment hearing to accept her requested award of attorney's fees ($13,397.50) although it did not include all of the fees she had incurred up to the time of the hearing. Mims has waived recovery of any attorney's fees beyond the amount of that agreement.

## Conclusion

We affirm the trial court's March 31, 2023 Final Judgment Against Garnishee Encore Bank.

/Bill Pedersen, III/

BILL PEDERSEN, III
JUSTICE

230414F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ETHICUS HOSPITAL DFW, LLC
AND PSN AFFILIATES, LLC,
Appellants

No. 05-23-00414-CV        V.

KRYSTAL MIMS, Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-16230.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Krystal Mims recover her costs of this appeal from appellants Ethicus Hospital DFW, LLC and PSN Affiliates, LLC.

Judgment entered August 2, 2024